**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| In re: | Chapter 7 |
| Civil, LLC, *et al.*, | Case No.: 25-20179-DLB |
| Debtors.[1] | (*Jointly Administered*) |

**EXPEDITED MOTION TO CONSIDER ENTRY OF ORDERS (A) APPROVING
AUCTION PROCEDURES FOR SALE OF ALL OR SUBSTANTIALLY ALL OF THE
DEBTORS' MACHINERY, EQUIPMENT AND RELATED MINING ASSETS;
(B) AUTHORIZING THE TRUSTEE TO DESIGNATE STALKING HORSE BIDDERS
AND APPROVING PROPOSED STALKING HORSE BID PROTECTIONS;
(C) SCHEDULING HEARING TO APPROVE THE SALE OF THE DEBTORS' ASSETS;
(D) SCHEDULING AUCTION; (E) APPROVING FORM AND MANNER OF NOTICE
OF AUCTION AND SALE HEARING; AND (F) GRANTING RELATED RELIEF**

Robert L, Johns, Chapter 7 Trustee (the "Trustee") for the Debtors' Bankruptcy Estates, by and through his undersigned special counsel, respectfully submits this *Expedited Motion to Consider Entry of Orders (A) Approving Auction Procedures for Sale of All or Substantially All of the Debtors' Machinery, Equipment and Related Mining Assets; (B) Authorizing the Trustee to Designate Stalking Horse Bidders and Approving Proposed Stalking Horse Bid Protections; (C) Scheduling Hearing to Approve Sale of the Debtors' Assets; (D) Scheduling Auction;(E) Approving Form and Manner of Notice of Auction and Sale Hearing; and (F) Granting Related Relief* (the "Sale Motion") pursuant to sections 105(a), 363, 503, and 507 of title 11 of the United States Code

---

[1] The Debtors in these chapter 7 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Civil, LLC (5464); Kratos Resources LLC (1003); Resilient Mining LLC (9306); Resilient Eagle, LLC (3535); Don Holdings, LLC (0259), Falcon Reclamation Limited Liability Company (1375), North Springs Holding LLC, Smoky Quartz LLC (2303), Big Mule Air L.L.C. (6964), Pocahontas Processing LLC (7297), and Yellow Garage, LLC (1313) (collectively, the "Debtors"). The headquarters for each of the Debtors is located at 799 Highway 3459, Harlan, Kentucky 40831.

(the "Bankruptcy Code"), and Bankruptcy Rules 2002, 4001, 6004, 9007, 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting the following relief:

    a.    Following an expedited hearing, entry of an order substantially in the form attached hereto as **Exhibit A** (the "Auction Procedures Order"): (i) authorizing and approving, among other things, the auction procedures in the form attached to the Auction Procedures Order as **Exhibit 1** (the "Auction Procedures") to govern the sale of the Debtors' machinery, equipment and related assets (collectively, the "Assets"), which include the bid protections afforded to potential Stalking Horse Bidders (if any as defined herein); (ii) authorizing and approving the form and manner of notice of the Auction and Sale Hearing (defined below) substantially in the form attached to the Auction Procedures Order as **Exhibit 2** (the "Auction and Sale Hearing Notice"); (iii) approving the sale process milestones; and (iv) scheduling of a hearing to consider approval of the sales of the Assets, any designated Stalking Horse Bidders, and any objections thereto (the "Sale Hearing") prior to the Auction; and,

    b.    immediately upon conclusion of the Sale Hearing and disposition of any objections to the proposed sale of Assets, entry of the proposed sale order (the "Sale Order"), which, subject to compliance with the Auction Procedures Order, will authorize and approve the sale of the Assets at the Auction free and clear of all Liens, interests, claims, and encumbrances to the fullest extent permitted by section 363(f) of the Bankruptcy Code, with any valid liens to attach to the proceeds of sale in the same order of priority, validity, and extent as existed prior to the sale.

In support of this Motion, the Trustee respectfully state as follows:

**JURISDICTION AND VENUE**

1.    The United States Bankruptcy Court for the Southern District of West Virginia (the "Court") has jurisdiction over the cases and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Trustee consents to entry of a final order under Article III of the United States Constitution.

2.    Venue of these Cases and this Motion in this District are proper under 28 U.S.C. §§ 1408 and 1409.

3.    The statutory bases for the relief requested in this Motion are section 105(a), 363, 503, and 507 of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, 6004, 9007, and 9014.

### BACKGROUND

4.      On August 20, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing chapter 11 cases (the "Chapter 11 Cases").

5.      Due to an inability to obtain adequate financing to fund the Chapter 11 Cases, the Chapter 11 cases were converted to chapter 7 cases (the "Chapter 7 Cases") on October 29, 2025 (the "Conversion Date"). On October 31, 2025 (the "Appointment Date"), the Trustee was appointed to administer the assets of the estates.

### ASSETS TO BE SOLD

6.      The Assets to be sold are held in the name of the individual Debtors and consists of coal mining equipment, trailers, motor vehicles, and related coal mining inventory held by the Debtors and located at: (i) 200 Open Fork Rd, Kingston, WV 25917 ("Deepwater"); and (ii) 870 Gateway Industrial Park Drive, Jenkins, KY 41537 ("Jenkins" and with Deepwater, collectively, the "Auctioned Asset Sites"), and more particularly described on **Exhibit B** attached hereto.[2] The Trustee has a pending application to employ RB Group (the "Auctioneer"),[3] and the Auctioneer is in the process of compiling a final list of Assets to be sold.

### LIENHOLDERS

7.      The following parties have or may have liens ("Liens") against the Assets to be sold pursuant to this Motion: Pocahontas Holdings, LLC; Pocahontas Land LLC; and Pocahontas Surface Interests, LLC (collectively, "Pocahontas Land"); KIA II LLC ("KIA"); Kentucky River Properties, LLC ("KRP"); Leslie Equipment Company; Ally Bank; Ford Motor Credit Company;

---

[2] The Trustee is working diligently with the Auctioneer to finalize the Assets for inclusion on Exhibit B, which the Trustee intends to file as a supplement to this Motion in advance of the hearing to consider approval and entry of the Auction Procedures Order.

[3] The "RB Group" includes Richie Bros. Auctioneers (America), Inc., IronPlanet, Inc., and Nations Capital, LLC.

AmeriCredit Financial Services, Inc. d/b/a GM Finance; Santander Consumer USA, Inc. d/b/a Chrysler Capital; Community Trust Bank; Trion Equipment Sales, LLC; AFG Investments 1A, LLC; SMA II LP I, LLC; Allegiance Capital, LLC ("Allegiance"); SMA II LP I, LLC ("SMA"); AFG Investments 1A, LLC ("AFGA"); and AFG Investments 1B, LLC ("AFGB" and with Allegiance, SMA, and AFGA, the "McGinty Group"); Target Drilling, Inc.; West Virginia State Tax Division; Commonwealth of Kentucky; and Conjun Laboratories, Inc. (collectively, the "Lienholders").

## THE SALE PROCESS

8.    Upon approval of the Auction Procedures, the Auctioneer will undertake commercially reasonable marketing efforts designed to identify and solicit bids from, and reach, prospective purchasers for the Assets, including, but not limited to, preparing an inventory and catalog of the Assets, photographing and describing the Assets, advertising the auction through online auction platforms and industry-specific publications, direct outreach to potential buyers, email marketing, and other customary advertising methods utilized in the auction industry.

9.    As the marketing by the Auctioneer proceeds, the Trustee will seek to identify any Stalking Horse Bidders prior to the Sale Hearing and designate the same with a notice to be filed with the Court. At the Sale Hearing, the Trustee will request the entry of the Sale Order authorizing the sale of the Assets at the Auction free and clear of Liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. § 363(f), with any valid Liens to attach to the proceeds of sale in the same order of priority, validity, and extent as existed prior to the sale. Parties-in-interest will be afforded the opportunity to object to the proposed sale of the Assets and designation of any Stalking Horse Bidder at the Sale Hearing.

4

10.     Following the entry of the Sale Order, the Trustee and the Auctioneer will conduct the Auction. The Auctioneer, in consultation with the Trustee, may require bidder registration, proof of funds, deposits, and payment in certified funds, wire transfer, or other customary forms of payment, and any other customary auction requirements in accordance with the terms of the Auction Procedures and the Auction Procedures Order. Purchasers will be responsible for timely removal of any Assets they purchase at the Auction at their sole cost and expense. Any Asset removal by purchasers after the closing of any Asset sale will be conducted in cooperation and through direct communication with the owners of the property whereon the Assets are located, including, without limitation, on the Auctioned Asset Sites.

11.     The Auction will be conducted as a public auction, which will occur online through the Auctioneer's virtual platform. To the extent feasible, the Trustee may obtain event liability insurance and/or require that all parties and bidders who attend the auction on-site execute a waiver prior to being permitted to enter any location where Assets are located, including, without limitation, the Auctioned Asset Sites. The Auction will be open to all qualified bidders and conducted in accordance with the Auction Procedures and the Auctioneer's general standards. The Trustee, in consultation with the Auctioneer, reserves the right to group any Assets into individual or bulk lots, to establish reasonable bidding increments as set forth in the Auction Procedures, to determine the highest and best bid for the Assets, either individually, as a lot, or as a whole, and to reject any bid that the Trustee determines, in his business judgment, is not in the best interests of the Debtors' estates. The Trustee also reserves the right to adjourn, continue, or cancel the Auction if necessary, if, in his business judgment, such a decision will maximize value or otherwise protect the interests of the estate. The Trustee may work in consultation with Pocahontas Land,

5

KIA, and KRP (collectively, the "Consultation Parties")[4] to make such determinations regarding adjournment, continuation, or cancellation of the Auction.

12.     The Assets will be sold to the highest and best bidder(s) on an "AS IS, WHERE IS" basis, without representations or warranties of any kind, express or implied. Consistent with the Sale Order, the Trustee will sell the Assets at the Auction free and clear of Liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. § 363(f), with any valid Liens to attach to the proceeds of sale in the same order of priority, validity, and extent as existed prior to the sale.

13.     The Trustee also seeks the authority, but not directive, to identify one or more stalking horse bids for some or all Assets (the "Stalking Horse Bids"), as set forth more fully below. The bids submitted by the stalking horse bidders (the "Stalking Horse Bidders" and each a "Stalking Horse Bidder") are subject to higher and better offers made in accordance with the Auction Procedures Order requested herein. If authorized by the Court and so designated by the Trustee, upon consultation with the Consultation Parties, the Auction Procedures provide the Stalking Horse Bidders with certain bid protections, including a Termination Fee and Expense Reimbursement (as defined below) if the Stalking Horse Bidders are ultimately not the successful purchasers of the Assets. As set forth more fully below, the Trustee believes, based on the bid requirements for Stalking Horse Bid consideration, any Stalking Horse Bid will be a competitive offer that merits granting these bid protections to the Stalking Horse Bidders.

14.     The Trustee also seeks the authority, but not directive, and subject to the exercise of his sound business judgment in accordance with his fiduciary duties to the estates, to accept credit bids by any putative Lienholder. To the extent the Trustee does not accept a duly submitted credit bid, such Lienholder may proceed with a credit bid in the Auction upon entry of an

---

[4] To the extent any Consultation Party becomes a bidder, such Consultation Party shall have no further consultation rights with respect to any assets subject to such Consultation Party's bid.

appropriate and final order by this Court, after notice and hearing, which the Trustee will consent to being heard on an expedited basis. Any putative Lienholder seeking the Court's authority to credit bid should include in its filing with the Court a proposed alternative for adequate assurance of payment if the purported lien is ultimately deemed to be invalid.

15.     The Trustee seeks permission to sell the Assets free and clear of any and all Liens, including the Liens of Lienholders, and upon entry of the Sale Order, such Liens will attach to the proceeds from the sale of Assets at the Auction in the same order of their existing priority and with the same validity, force, and effect as existed prior to the sale. Nothing herein or in any order entered in conjunction with the relief requested in this Sale Motion, including any final order or orders approving the Trustee's sale of the Assets, is or shall be construed as a final determination as to the validity, priority, or enforceability of any of the Lienholders' Liens that may attach to the proceeds from the sale of the Assets. All Lienholders' Liens remain subject to the rights of the Trustee to challenge or otherwise object. Further, the rights of each Lienholder to assert and defend the validity, priority, and enforceability of their respective Liens on the Assets, as they existed on the Petition Date and/or prior to the occurrence of the Auction, are hereby expressly preserved now and after such Liens attach to the proceeds of the sale of the Assets contemplated herein.

16.     The net proceeds from the Trustee's sale of the Assets, following payment to the Auctioneer, shall be paid to the Trustee and deposited into an escrow account to be held pending further order of this Court; *provided*, *however*, that the Trustee is authorized, without the need for further order of the Court, to disburse from the sale proceeds funds sufficient to pay (i) the Trustee's statutory commission, and (ii) the reasonable fees and expenses of the Trustee's retained professionals, which shall be held in escrow by the Trustee pending submission and approval of one or more interim and/or final fee applications by the Trustee's retained professionals.

**STALKING HORSE PROTECTIONS**

17.     The Trustee requests authority, but not an obligation, to select a Stalking Horse Bidder, in which case such Stalking Horse Bidder shall be entitled to receive a Termination Fee and Expense Reimbursement as set forth below. The Trustee, in consultation with the Consultation Parties who are not bidders, shall have sole discretion to designate any Stalking Horse Bidder(s) if the Trustee determines, in his sound business judgment and in accordance with his fiduciary duties owed to his estates, upon consultation with his retained professionals, including the Auctioneer, that such Bid should be deemed a Stalking Horse Bid. Parties who have indicated an interest in being a bidder shall not be a Consultation Party.

18.     Accordingly, the Trustee seeks approval, but not directive, to provide any accepted Stalking Horse Bidders with: (i) a termination fee not to exceed two percent (2%) of the Stalking Horse Bid (the "Termination Fee"), and (ii) actual and reasonable legal and diligence expense reimbursement in an amount not to exceed the greater of two percent (2%) or $30,000 (the "Expense Reimbursement" and with the Termination Fee, the "Bid Protections"). The Trustee submits that the proposed Bid Protections are reasonable in light of, among other things, the benefit of inviting Stalking Horse Bids to set a minimum bid threshold for the auction of the Assets.

**NEED FOR AN EXPEDITIOUS SALE PROCESS**

19.     The Trustee respectfully submits that an expedited hearing for the approval of the proposed Auction Procedures is warranted under the circumstances of these Chapter 7 Cases. The estate has limited operating funds with which to maintain, insure, store, or otherwise preserve the Assets. Ongoing administrative costs, including insurance premiums and other holding costs, continue to accrue and risk eroding or eliminating any value that could otherwise be realized. Moreover, the Assets of this nature are subject to depreciation, market fluctuation, and potential

deterioration so long as it remains unsold. Expedited approval of the Auction Procedures will allow the Auctioneer to begin marketing the Assets, minimize administrative expenses, reduce the risk of value diminution, and allow the Trustee to convert the Assets into cash in an efficient manner. Accordingly, the Trustee submits that cause exists to shorten notice to consider approval of the Auction Procedures, thereby allowing the Trustee to commence the sale process in an expeditious manner so as to maximize the value of the estate.

20. Importantly, the proposed timeline does not shorten the required 21-day period for creditors and parties in interest to object to the sale of the Assets. The Trustee proposes to afford creditors and parties in interest no less than 21 days to object to the sale of the Assets and any designated Stalking Horse Bid, which period runs contemporaneously with the marketing of the Assets to be sold pursuant to the relief requested in this Motion.

## AUCTION PROCEDURES

### A.   Overview

21. The Auction Procedures are designed to promote a competitive and expedient sale process. If approved, the Auction Procedures will allow the Trustee to solicit and identify bids from potential buyers that constitute the highest and/or best offer(s) for the Assets in an efficient manner and on a reasonable timeline while contemporaneously seeking the entry of the Sale Order requested in this Motion.

22. The Trustee believes the proposed Auction Procedures summarized below are fair and appropriate. Because the Auction Procedures are attached as **Exhibit 1** to the Auction Procedures Order, they are not restated in their entirety herein. Among other things, the Auction Procedures provide the following:[5]

---

[5] To the extent there is any inconsistency between this summary and the Auction Procedures, the Auction Procedures will govern.

9

a. To be eligible to participate in the Auction, each potential bidder must comply with the Auction Procedures attached to the Auction Procedures Order, including registering their names, addresses, and contact phone numbers with the Auctioneer and providing reasonable proof of funds to the Auctioneer or the Trustee as requested;

b. Bid increments for each Asset or lot will be determined at the Auction by the Auctioneer, upon consultation with the Trustee;

c. At the Auction, the Auctioneer will conduct the auction and determine, in consultation with the Trustee which bid is the highest and/or best bid for the Assets (the "Successful Bid," and the bidder submitting such Successful Bid, the "Successful Bidder");

d. The Trustee may select one or more bids for the purchase of individual Assets, lots of Assets, or all Assets.

e. There will be no extension or continuation of the Auction unless ordered by the Court or elected by the Trustee in his sole discretion, upon consultation with the Auctioneer, the Consultation Parties, and the Trustee's professionals.

## B. The Notice Procedures

23. Contemporaneous with the filing of this Sale Motion, the Trustee will respectfully request an expedited hearing to consider the same. If this Court enters an order scheduling an expedited hearing to consider entry of the Auction Procedures Order (the "Expedited Scheduling Order"), the Trustee proposes to serve this Sale Motion and the Expedited Scheduling Order by electronic mail (separate from CM/ECF Notification) on all parties receiving CM/ECF Notification in the above-captioned cases within twenty-four (24) hours of the entry of the Expedited Scheduling Order. As the Trustee only seeks approval of the Auction Procedures Order (including setting dates in connection with this Sale Motion which will be included in the Auction and Sale Hearing Notice) and all parties' rights to object to the sale of the Assets are preserved through the Sale Objection Deadline, the Trustee submits that this proposed procedure provides adequate notice of the request for entry of the Auction Procedures Order.

10

24.     Upon entry of the Auction Procedures Order, through which the Trustee seeks approval of the form of the Auction and Sale Hearing Notice attached to the proposed Auction Procedures Order as **Exhibit 2**, the Trustee proposes to serve this Sale Motion and the Auction and Sale Hearing Notice consistent with Bankruptcy Rule 2002(a), which provides that all creditors of a bankruptcy estate are entitled to receive at least 21 days' notice by mail of a proposed sale or property of the estate other than in the ordinary course of business, unless the bankruptcy court for cause shown shortens the time or directs another method of giving notice.

25.     To satisfy this requirement, the Trustee proposes to serve this Sale Motion and the Auction and Sale Hearing Notice by electronic mail to counsel who has filed an appearance in the Debtors' cases on behalf of any party or, if no electronic mail address is available, by first-class mail, postage prepaid, on the following parties (collectively, the "Sale Notice Parties"): (a) all of the Debtors' creditors; (b) all entities that have, to the best knowledge of the Trustee and his professionals, expressed written interest in purchasing any of the Assets within the past one (1) year; (c) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Assets; (d) the U.S. Trustee; (e) all parties that have requested notice pursuant to Bankruptcy Rule 2002; (f) all federal, state, and local regulatory or taxing authorities, including any applicable taxing bodies or recording offices which have a reasonably known interest in the relief granted herein; (g) the Internal Revenue Service; (h) any other governmental authority known or reasonably believed by the Trustee to have or assert a claim against any of the Debtors in the Cases; and (i) the Office of the Attorney General and Office of the Secretary of State for the State of West Virginia.

26.     The Trustee submits that service of this Sale Motion and the Auction and Sale Hearing Notice as set forth above is proper and sufficient and constitutes adequate and reasonable

notice of the key dates and deadlines for the sale process, including, among other things, the deadline to object to the sale of Assets and any designated Stalking Horse Bidder, the Sale Hearing, and the Auction. Accordingly, the Trustee requests that the Court find that the Notice Procedures are adequate and appropriate under the circumstances and comply with the requirements of Bankruptcy Rule 2002, 6004 and 6006.

**BASIS FOR RELIEF**

I.    **APPROVAL OF THE SALE OF THE ASSETS IS APPROPRIATE AND IN THE BEST INTERESTS OF THE DEBTORS' ESTATES.**

   A.    *The Sale of the Assets Should Be Approved as an Exercise of the Trustee's Sound Business Judgment.*

27.    Ample authority exists for approval of the sale of Assets contemplated by this Motion. Section 363(b) of the Bankruptcy Code provides that a debtor may sell property of the estate outside the ordinary course of business after notice and a hearing. Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts have required that such use, sale, or lease be based upon the debtor's sound business judgment. *See In re Alpha Natural Resources, Inc.,* 546 B.R. 348, 356 (Bankr. E.D. Va. 2016) ("Courts apply the deferential business judgment test when analyzing transactions under § 363(b)"); *see, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *In re Lionel Corp.*); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (holding that the Third Circuit adopted the "sound business judgment" test in *Abbotts Dairies*); *Dai-Ichi*

*Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (same).

28.     The demonstration of a valid business justification by the debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

29.     The Trustee, vested with the authority to make such a determination as a matter of law, submits that the decision to consummate the sale of the Assets represents a reasonable exercise of the Trustee's business judgment and, accordingly, the proposed sale of Equipment should be approved under sections 105(a) and 363(b) of the Bankruptcy Code. The Trustee, in coordination with the Auctioneers, is conducting and will continue to conduct an extensive and fulsome process to market the Assets prior to the Auction. The open and fair auction and sale process contemplated by the Auction Procedures will ensure that the Debtors' estates receive the highest or otherwise best value for the Assets and will provide a greater recovery than would be provided by any other available alternative. Furthermore, compliance with the Auction Procedures will ensure the fairness and reasonableness of the consideration to be exchanged by the Stalking Horse Bidders or other successful bidders and establish that the Trustee and such bidders have proceeded in good faith.

30.     The Trustee has a sound business justification for selling the Assets pursuant to a competitive Auction process consistent with the Auction Procedures. The sale of the Assets pursuant to a competitive Auction process would likely be the best way to maximize the value of

the Debtors' assets. If a Stalking Horse Bid is selected based on the required criteria for such Stalking Horse Bid, the Trustee submits such bid will be fair and reasonable. With approval of the Auction Procedures, the Trustee is confident that the sale process will culminate in the Trustee obtaining the highest or otherwise best offer for the Assets.

31. As such, the Trustee's determination to sell the Assets pursuant to a competitive Auction process as provided for in the Auction Procedures is a valid and sound exercise of the Trustee's business judgment. The Trustee believes that he has proposed a fair process for obtaining the highest and/or best offer and sale of the Assets for the benefit of the Debtors' estates and parties in interest. The fairness and reasonableness of the consideration to be received by the Trustee will be demonstrated by a "market check" through the process outlined in the Auction Procedures.

### B. The Sale of Assets Should be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code.

32. Section 363(f) of the Bankruptcy Code permits a debtor to sell assets free and clear of all Liens, claims, interests, and encumbrances (with any such Liens, claims, interests, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets) if any one of the following conditions is satisfied:

    a. applicable non-bankruptcy law permits sale of such property free and clear of such interest;

    b. such entity consents;

    c. such interest is a lien and the price at which such property is to be sold is greater than the value of all Liens on such property;

    d. such interest is in bona fide dispute; or

    e. such entity could be compelled, in legal or equitable proceedings, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). As section 363(f) is stated in the disjunctive, when proceeding pursuant to section 363(f), it is necessary to meet only one of the five conditions of section 363(f). *In Messina*, 687 F.3d 74, 77 n.4 (3d Cir. 2012); *In re WBQ Partnership*, 189 B.R. 97, 105 (Bankr. E.D.Va. 1995); *In re Collins,* 180 B.R. 447, 450 (Bankr. E.D.Va, 1995); In *re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007); *see also Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code § 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code § 363(f) is met).

33.     The Court may also authorize the sale of a debtors' assets free and clear of any liens pursuant to section 105 of the Bankruptcy Code, even if section 363(f) of the Bankruptcy Code does not apply. *See In re Ditech Holding Corp.*, 606 B.R. 544, 591 (Bankr. S.D.N.Y. 2019) ("[P]lan sales can be free and clear of claims without invoking section 363(f)."); *In re Trans World Airlines, Inc.*, No. 01-0056, 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001) ("[B]ankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of section 363(f)."); *see also Volvo White Truck Corp. v. Chambersberg Beverage, Inc. (In re White Motor Credit Corp.*), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11."); *see also In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr. N.D. Ohio 1987) (holding that section 363(f) precluded tort claims against asset purchaser); *In re Appalachia Fuels, LLC*, 503 F.3d 538 (6th Cir. 2007) (approving a sale free and clear of "claims" arising as coal commission sales). The Trustee submits, and to the extent necessary will demonstrate at the Sale Hearing, that the sale of the Assets free and clear of all liens,

claims, interests, and encumbrances will satisfy one or more of the requirements under section 363(f) of the Bankruptcy Code.[6] Accordingly, the Trustee requests that the Court authorize the sale of the Assets free and clear of any Liens, claims, interests and encumbrances, in accordance with section 363(f) of the Bankruptcy Code, subject to such Liens, claims, interests and Encumbrances attaching to the proceeds thereof in the same order of relative priority, with the same validity, force and effect as prior to such transfer.

### C.    *Liens and Other Interests will Attach to the Proceeds in Accordance with their Existing Priority.*

34.    As provided by the Bankruptcy Code, and as set forth above, nothing herein or in any order entered in conjunction with the relief requested in this Sale Motion, including any final order or orders approving the Trustee's sale of the Assets, is or shall be construed as a final determination as to the validity, priority, or enforceability of any of the Lienholders' Liens that may attach to the proceeds from the of the sale of the Assets. All of the Lienholders' Liens remain subject to the rights of the Trustee to challenge or otherwise object to such asserted Liens unless otherwise allowed by final Order of this Court. Further, the rights of each Lienholder to assert and defend the validity, priority, and enforceability of their respective Liens on the Assets, as they existed on the Petition Date and/or prior to the occurrence of the Auction, are hereby expressly preserved now and after such Liens attach to the proceeds of the sale of the Assets contemplated herein.

---

[6] Moreover, the Trustee will send the Auction and Sale Hearing Notice to purported creditors and Lienholders. If such creditors and Lienholders do not object to the proposed sale, then their consent should be presumed. Accordingly, the Trustee requests that, unless a party asserting a prepetition lien, claim or encumbrance on any of the Assets timely objects to this Motion, such party shall be deemed to have consented to any sale approved at the Sale Hearing. *See, e.g.*, *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285–86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent"); *Hargave v. Twp. of Pemberton*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to a sale motion, a creditor is deemed to consent to the relief requested therein).

35.     As noted above, the net sale proceeds from the sale of the Assets, following payment to the Auctioneer, shall be paid to the Trustee and deposited into an escrow account to be held pending further order of this Court; *provided*, *however*, that the Trustee is authorized, without the need for further order of the Court, to disburse from the sale proceeds payment of (i) the Trustee's statutory commission, and (ii) the reasonable fees and expenses of the Trustee's retained professionals to be held in escrow by the Trustee pending submission and approval of one or more interim and/or final fee applications by the Trustee's retained professionals.

### D.     The Sale and Auction Process Has Been Proposed in Good Faith and Without Collusion, and Each Successful Bidder Will Be a "Good Faith Purchaser."

36.     Pursuant to section 363(m) of the Bankruptcy Code,[7] a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *O'Dwyer v. O'Dwyer (In re O'Dwyer)*, 611 Fed. App'x. 195, 200 (5th Cir. 2015); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D.N.J. May 11, 2007); see also *In re Abbotts Dairies*, 788 F.2d at 147 (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders); *In re Made In Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005) (following the *Abbotts Dairies* standard).

37.     In other words, a party would have to show fraud or collusion between the successful bidder and the debtor-in-possession or trustee or other bidders to demonstrate a lack of good faith. An appropriate characterization of good faith in a bankruptcy sale is a lack of

---

[7] Section 363(m) of the Bankruptcy Code provides: The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

17

"fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 n.7 (5th Cir.1981) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." *Made In Detroit, Inc.*, 414 F.3d at 581 (6th Cir. 2005) (quoting *In re Rock Indus.*, 572 F.2d at 1998).

38.     The Trustee submits that the Auction Procedures are designed to produce a fair and transparent competitive Auction process. Each bidder participating in the Auction must confirm, by written document executed under penalty of perjury by each bidder and each bidder's counsel, that: (a) it has not engaged in any collusion with respect to the Sale or Auction Procedures (including that it has no agreement with any other bidder to control or negatively impact the price); (b) there have been no communications with any other potential bidder(s) regarding the Assets being sold or bids relating to the same; and (c) any bids are a good faith bona fide offer and said bidder intends to consummate the Sale Transaction if selected as a Successful Bidder for all or any of the Assets and it has not engaged in any collusion with respect to the Auction or the sale of any of the Assets. Accordingly, the Trustee seeks a finding that any Successful Bidder (including any Stalking Horse Bidders, if designated) are good faith purchasers and entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

### E.     The Court Should Waive the Stay of Bankruptcy Rules 6004 and 6006.

39.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an

18

"order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

40.     The Trustee believes that any sale should be consummated as soon as practicable to preserve and maximize value. This is particularly important considering the continued incurrence of administrative costs in these Chapter 7 cases. Accordingly, the Trustee requests that any Sale Order approving the sale of the Assets be effective immediately upon entry of such order and that the fourteen-day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived, such that the Trustee can forthwith commence the Auction following entry of the Sale Order.

## II.     THE AUCTION PROCEDURES, INCLUDING THE BID PROTECTIONS, SHOULD BE APPROVED.

41.     The Auction Procedures are appropriate and in the best interests of the Debtors, their estates, and the creditors. The key objective in any sale of property of a debtor's estate is to maximize the value received by the estate. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor "had a fiduciary duty to protect and maximize the estate's assets"); *Official Comm. of Unsecured Creditors of Cybergenics, Corp v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) (same).

42.     Courts uniformly recognize that procedures established for the purpose of enhancing competitive auction are consistent with the fundamental goal of maximizing the value of a debtor's estate. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999) (noting that auction procedures that promote competitive auction provide a benefit to a debtor's estate); *Integrated Res.*, 147 B.R. at 659 (stating that auction procedures "encourage auction[s] and . . . maximize the value of the debtor's assets").

43.     The Trustee has designed the Auction Procedures to promote a competitive and fair Auction process and, thus, maximize value for the Debtors' estates and creditors. The Auction Procedures will allow the Trustee and the Auctioneer to conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders, thereby increasing the likelihood that the Trustee will receive the highest or best possible consideration for the Assets. Furthermore, the Auction Procedures provide an appropriate framework for the Trustee to receive bids that are in the best interests of the Debtors' estates and their creditors.

44.     The Trustee submits that the Auction Procedures are fair and transparent and will derive the highest or best bids for the Assets. Therefore, the Trustee requests the Court approve the Auction Procedures.

### A.     *The Stalking Horse Bid Protections Should be Approved.*

45.     The Auction Procedures provide for the Bid Protections discussed above, including a Termination Fee in an amount of two percent (2%) of the Stalking Horse Bid and an Expense Reimbursement of the greater of two percent (2%) or $30,000 to be paid to any Stalking Horse Bidder. The Bid Protections are the customary in these types of bankruptcy sale transactions, and the Bid Protections, including the Termination Fee and Expense Reimbursement, are designed to entice a potential bidder to submit a Stalking Horse Bid, thereby setting a minimum floor for the sale of some or all of the Assets.

46.     Stalking horse bidders virtually always require termination fees and, in many cases, other forms of bid protections as an inducement for "setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement." *Official Comm. of Unsecured Creditors v. Interforum Holding, LLC*, No. 11-CV-219, 2011 U.S. Dist. LEXIS 73421, at *4 n.2 (E.D. Wis. July 7, 2011).

20

Whether termination fees and expenses are allowable is subject to the same standard as other general administrative expenses under section 503 of the Bankruptcy Code. *In re O'Brien,* 191 F.3d at 532.

47.     In order to maximize the value of the Assets, the Trustee believes it is appropriate to offer the Bid Protections in order to induce a potential bidder to submit a Stalking Horse Bid, thereby securing a commitment to purchase some or all of the Assets and establishing a minimum sales price for the same. Accordingly, the Bid Protections are designed to maximize the value of the Debtors' estates because they increase the likelihood of setting an adequate floor for the Assets – a clear benefit to the Debtors' estates.

48.     Moreover, there has been no self-dealing or manipulation of any kind in the negotiation of the Auction Protections; rather, the Auction Procedures were prepared by the Trustee. The Trustee believes that the Bid Protections are reasonable and necessary to induce potential Stalking Horse Bids.

49.     Pursuant to the Auction Procedures, in the event the Trustee designates one or more Stalking Horse Bidders, any bidder that wishes to acquire Assets that is subject to a designated Stalking Horse Bid must submit a higher or better offer than the bid of a Stalking Horse Bidder and the corresponding Bid Protections, which higher or better offer would be used to fund the Bid Protections. Ultimately, if the Assets are sold to a Successful Bidder other than the Stalking Horse Bidders, it is likely attributable to the Stalking Horse Bidders role in initiating interest and setting a minimum acceptable price for others to bid against, thereby raising the sale price of such Assets.

50.     The Trustee believes the Bid Protections, as proposed, are appropriate and reasonable and consistent with other bid protections approved by courts. *See In re Abarta Oil & Gas Co, LLC*, Case No. 21-22406, Doc. No. 110 (Bankr. W.D. Pa. Nov. 11, 2021) (court approved

21

Termination Fee of 3.0% in a sale transaction with $8,000,000 purchase price); *In re America Classic Voyages Co.,* Case No. 01-10954 (EIK) (Bankr. D. Del. March 20, 2002) (court approved breakup fee of 6.6% or $250,000 in connection with a $3.75 million sale transaction); *In re Chi-Chi's, Inc.*, Case No. 03-13063, Doc. 143 (Bankr. D. Del. November 4, 2003) (fee of 5.1% permitted). The Bid Protections are a sound exercise of the Trustee's business judgment and are in the best interests of the Debtors, their estates, and all stakeholders. Accordingly, the Court should approve the Bid Protections.

## **<u>NO PRIOR REQUEST</u>**

51.     No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Trustee respectfully requests that the Court enter the Auction Procedures Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, and, after the Sale Hearing, a Sale Order granting the relief requested herein, authorizing the Trustee to commence the Auction, and granting and such other and further relief as the Court may deem just and proper.

[*signature page follows*]

Dated: March 4, 2026      Respectfully submitted:

**ROBERT L. JOHNS,**
**CHAPTER 7 TRUSTEE**
**By Counsel:**

   /s/ Robert L. Johns
ROBERT L. JOHNS [WV S.B. #5161]
Johns & Associates, PLLC
101 Brook Hill Drive
Charleston, West Virginia 25311
(304) 720 – 2300
(304) 720 – 2311 *fax*

     -AND-

**RAINES FELDMAN LITTRELL, LLP**

By: */s/ Daniel R. Schimizzi*
Michael J. Roeschenthaler (PA ID No. 87647)
Daniel R. Schimizzi (PA ID No. 311869)
Sarah E. Wenrich (PA ID No. 325834)
*Admitted Pro Hac Vice*
11 Stanwix Street, Suite 750
Pittsburgh, PA 15222
Telephone: 412-899-6472
Email: mroeschenthaler@raineslaw.com
dschimizzi@raineslaw.com
swenrich@raineslaw.com

*Special Counsel to the Chapter 7 Trustee*

## Certificate of Service

   I certify that I caused the foregoing *Expedited Motion to Consider Entry of Orders (A) Approving Auction Procedures for Sale of All or Substantially All of the Debtors' Machinery, Equipment and Related Mining Assets; (B) Authorizing the Trustee to Designate Stalking Horse Bidders and Approving Proposed Stalking Horse Bid Protections; (C) Scheduling Hearing to Approve Sale of the Debtors' Assets; (D) Scheduling Auction;(E) Approving Form and Manner of Notice of Auction and Sale Hearing; and (F) Granting Related Relief* (the "Motion") to be served on the following parties by CM/ECF Notification on March 4, 2026:

Christopher R. Arthur on behalf of Interested Party United States Department of Labor
chris.arthur@usdoj.gov, usawvs.ecfbankruptcy@usdoj.gov;caseview.ecf@usdoj.gov

John Zachary Balasko on behalf of Attorney Steptoe & Johnson
zak.balasko@steptoe-johnson.com

John Zachary Balasko on behalf of Debtor Big Mule Air L.L.C.
zak.balasko@steptoe-johnson.com

John Zachary Balasko on behalf of Debtor Civil, LLC
zak.balasko@steptoe-johnson.com

John Zachary Balasko on behalf of Debtor Don Holdings, LLC
zak.balasko@steptoe-johnson.com

John Zachary Balasko on behalf of Debtor Falcon Reclamation Limited Liability Company
zak.balasko@steptoe-johnson.com

John Zachary Balasko on behalf of Debtor Kratos Resources LLC
zak.balasko@steptoe-johnson.com

John Zachary Balasko on behalf of Debtor North Springs Holding LLC
zak.balasko@steptoe-johnson.com

John Zachary Balasko on behalf of Debtor Pocahontas Processing LLC
zak.balasko@steptoe-johnson.com

John Zachary Balasko on behalf of Debtor Resilient Eagle LLC
zak.balasko@steptoe-johnson.com

John Zachary Balasko on behalf of Debtor Resilient Mining, LLC
zak.balasko@steptoe-johnson.com

John Zachary Balasko on behalf of Debtor Smoky Quartz LLC
zak.balasko@steptoe-johnson.com

John Zachary Balasko on behalf of Debtor Yellow Garage, LLC
zak.balasko@steptoe-johnson.com

Angel L. Beblo on behalf of Creditor Conserv Equipment Leasing LLC
angela.beblo@jacksonkelly.com, angela.beblo@ecf.courtdrive.com;vmpeery@jacksonkelly.com

Angel L. Beblo on behalf of Creditor Conserv Lending LLC
angela.beblo@jacksonkelly.com, angela.beblo@ecf.courtdrive.com;vmpeery@jacksonkelly.com

Brian Richard Blickenstaff on behalf of Trustee Robert L. Johns
bblickenstaff@johnswvlaw.com

24

Joseph G. Bunn on behalf of Creditor AFG Investments 1A, LLC
jbunn@babstcalland.com,
kmarkins@babstcalland.com;jpritchard@babstcalland.com;bmccoy@babstcalland.com;smeadows@babstcalland.com;sburgess@babstcalland.com

Joseph G. Bunn on behalf of Creditor AFG Investments 1B, LLC
jbunn@babstcalland.com,
kmarkins@babstcalland.com;jpritchard@babstcalland.com;bmccoy@babstcalland.com;smeadows@babstcalland.com;sburgess@babstcalland.com

Joseph G. Bunn on behalf of Creditor McGinty Road Partners
jbunn@babstcalland.com,
kmarkins@babstcalland.com;jpritchard@babstcalland.com;bmccoy@babstcalland.com;smeadows@babstcalland.com;sburgess@babstcalland.com

Joseph G. Bunn on behalf of Creditor SMA II LP I, LLC
jbunn@babstcalland.com,
kmarkins@babstcalland.com;jpritchard@babstcalland.com;bmccoy@babstcalland.com;smeadows@babstcalland.com;sburgess@babstcalland.com

Thomas L. Canary, Jr. on behalf of Creditor AmeriCredit Financial Services, Inc. dba GM Financial
bankruptcy@weinerlaw.com

Thomas L. Canary, Jr. on behalf of Creditor Ford Motor Credit Company LLC
bankruptcy@weinerlaw.com

Thomas L. Canary, Jr. on behalf of Creditor Santander Consumer USA Inc. dba Chrysler Capital
bankruptcy@weinerlaw.com

Shari Collias on behalf of U.S. Trustee United States Trustee
Shari.Collias@usdoj.gov

Sarah Ellis on behalf of Debtor Big Mule Air L.L.C.
sarah.ellis@steptoe-johnson.com, susan-oxley-5561@ecf.pacerpro.com;kellie-laraba-5306@ecf.pacerpro.com

Sarah Ellis on behalf of Debtor Civil, LLC
sarah.ellis@steptoe-johnson.com, susan-oxley-5561@ecf.pacerpro.com;kellie-laraba-5306@ecf.pacerpro.com

Sarah Ellis on behalf of Debtor Don Holdings, LLC
sarah.ellis@steptoe-johnson.com, susan-oxley-5561@ecf.pacerpro.com;kellie-laraba-5306@ecf.pacerpro.com

Sarah Ellis on behalf of Debtor Falcon Reclamation Limited Liability Company
sarah.ellis@steptoe-johnson.com, susan-oxley-5561@ecf.pacerpro.com;kellie-laraba-5306@ecf.pacerpro.com

Sarah Ellis on behalf of Debtor Kratos Resources LLC
sarah.ellis@steptoe-johnson.com, susan-oxley-5561@ecf.pacerpro.com;kellie-laraba-5306@ecf.pacerpro.com

Sarah Ellis on behalf of Debtor North Springs Holding LLC
sarah.ellis@steptoe-johnson.com, susan-oxley-5561@ecf.pacerpro.com;kellie-laraba-5306@ecf.pacerpro.com

Sarah Ellis on behalf of Debtor Pocahontas Processing LLC
sarah.ellis@steptoe-johnson.com, susan-oxley-5561@ecf.pacerpro.com;kellie-laraba-5306@ecf.pacerpro.com

Sarah Ellis on behalf of Debtor Resilient Eagle LLC
sarah.ellis@steptoe-johnson.com, susan-oxley-5561@ecf.pacerpro.com;kellie-laraba-5306@ecf.pacerpro.com

Sarah Ellis on behalf of Debtor Resilient Mining, LLC
sarah.ellis@steptoe-johnson.com, susan-oxley-5561@ecf.pacerpro.com;kellie-laraba-5306@ecf.pacerpro.com

Sarah Ellis on behalf of Debtor Smoky Quartz LLC
sarah.ellis@steptoe-johnson.com, susan-oxley-5561@ecf.pacerpro.com;kellie-laraba-5306@ecf.pacerpro.com

Sarah Ellis on behalf of Debtor Yellow Garage, LLC
sarah.ellis@steptoe-johnson.com, susan-oxley-5561@ecf.pacerpro.com;kellie-laraba-5306@ecf.pacerpro.com

Aaron Leonard Graves on behalf of Creditor Kentucky River Properties LLC
agraves@flahertylegal.com

Jennifer J. Hicks on behalf of Creditor AFG Investments 1A, LLC
jhicks@babstcalland.com,
smeadows@babstcalland.com;kmarkins@babstcalland.com;jpritchard@babstcalland.com;sburgess@babstcalland.com

Jennifer J. Hicks on behalf of Creditor AFG Investments 1B, LLC
jhicks@babstcalland.com,
smeadows@babstcalland.com;kmarkins@babstcalland.com;jpritchard@babstcalland.com;sburgess@babstcalland.com

26

Jennifer J. Hicks on behalf of Creditor McGinty Road Partners
jhicks@babstcalland.com,
smeadows@babstcalland.com;kmarkins@babstcalland.com;jpritchard@babstcalland.com;sburge
ss@babstcalland.com

Jennifer J. Hicks on behalf of Creditor SMA II LP I, LLC
jhicks@babstcalland.com,
smeadows@babstcalland.com;kmarkins@babstcalland.com;jpritchard@babstcalland.com;sburge
ss@babstcalland.com

Janet Smith Holbrook on behalf of Creditor Community Trust Bank, Inc.
janet.holbrook@dinsmore.com, jamie.bishop@dinsmore.com

Bruce M. Jacobs on behalf of Creditor AFCO Credit Corporation
bjacobs@spilmanlaw.com, rmoss@spilmanlaw.com

Bruce M. Jacobs on behalf of Creditor Vecellio & Grogan, Inc.
bjacobs@spilmanlaw.com, rmoss@spilmanlaw.com

Bruce M. Jacobs on behalf of Interested Party Coal-Mac LLC
bjacobs@spilmanlaw.com, rmoss@spilmanlaw.com

Bruce M. Jacobs on behalf of Interested Party Manchester Realty, LLC
bjacobs@spilmanlaw.com, rmoss@spilmanlaw.com

Joseph T Johns on behalf of Creditor Conserv Equipment Leasing LLC
joseph.johns@jacksonkelly.com,
joseph.johns@ecf.courtdrive.com;nicole.turner@jacksonkelly.com

Joseph T Johns on behalf of Creditor Conserv Lending LLC
joseph.johns@jacksonkelly.com,
joseph.johns@ecf.courtdrive.com;nicole.turner@jacksonkelly.com

Robert L. Johns
rjohns@turnerjohns.com,
bblickenstaff@turnerjohns.com;rlj@trustesolutions.net;amarshall@turnerjohns.com;rlj@trusteso
lutions.net

Robert L. Johns on behalf of Trustee Robert L. Johns
rjohns@turnerjohns.com,
bblickenstaff@turnerjohns.com;rlj@trustesolutions.net;amarshall@turnerjohns.com;rlj@trusteso
lutions.net

Ellen Arvin Kennedy on behalf of Creditor Kentucky River Properties LLC
ellen.kennedy@dinsmore.com, DSBankruptcy@dinslaw.com

Gary O. Kinder on behalf of U.S. Trustee United States Trustee
gary.o.kinder@usdoj.gov

James W. Lane, Jr. on behalf of Creditor Kentucky River Properties LLC
jlane@flahertylegal.com, rkoon@flahertylegal.com

Beverly Weiss Manne on behalf of Creditor KIA II LLC
bmanne@tuckerlaw.com

Lauren Hutchins McCartney on behalf of Creditor KIA II LLC
lmccartney@tuckerlaw.com

Jennifer McLain McLemore on behalf of Creditor Pocahontas Holdings LLC
jmclemore@williamsmullen.com, avaughn@williamsmullen.com

Jennifer McLain McLemore on behalf of Creditor Pocahontas Land LLC
jmclemore@williamsmullen.com, avaughn@williamsmullen.com

Jennifer McLain McLemore on behalf of Creditor Pocahontas Sales & Logistics LLC
jmclemore@williamsmullen.com, avaughn@williamsmullen.com

Jennifer McLain McLemore on behalf of Creditor Pocahontas Surface Interests LLC
jmclemore@williamsmullen.com, avaughn@williamsmullen.com

Jennifer McLain McLemore on behalf of Creditor WPP LLC
jmclemore@williamsmullen.com, avaughn@williamsmullen.com

Jennifer McLain McLemore on behalf of Creditor Western Pocahontas Properties Limited
Partnership
jmclemore@williamsmullen.com, avaughn@williamsmullen.com

Michael R. Proctor on behalf of Creditor Pocahontas Holdings LLC
mproctor@bowlesrice.com, lcrown@bowlesrice.com

Michael R. Proctor on behalf of Creditor Pocahontas Land LLC
mproctor@bowlesrice.com, lcrown@bowlesrice.com

Michael R. Proctor on behalf of Creditor Pocahontas Sales & Logistics LLC
mproctor@bowlesrice.com, lcrown@bowlesrice.com

Michael R. Proctor on behalf of Creditor Pocahontas Surface Interests LLC
mproctor@bowlesrice.com, lcrown@bowlesrice.com

Michael R. Proctor on behalf of Creditor WPP LLC
mproctor@bowlesrice.com, lcrown@bowlesrice.com

Michael R. Proctor on behalf of Creditor Western Pocahontas Properties Limited Partnership
mproctor@bowlesrice.com, lcrown@bowlesrice.com

Ancil G. Ramey on behalf of Plaintiff Civil, LLC
ancil.ramey@steptoe-johnson.com, ancil@ancil.net,ancil-ramey-5727@ecf.pacerpro.com

Ancil G. Ramey on behalf of Plaintiff Pocahontas Processing LLC
ancil.ramey@steptoe-johnson.com, ancil@ancil.net,ancil-ramey-5727@ecf.pacerpro.com

Ancil G. Ramey on behalf of Plaintiff Resilient Eagle LLC
ancil.ramey@steptoe-johnson.com, ancil@ancil.net,ancil-ramey-5727@ecf.pacerpro.com

Ancil G. Ramey on behalf of Plaintiff Resilient Mining, LLC
ancil.ramey@steptoe-johnson.com, ancil@ancil.net,ancil-ramey-5727@ecf.pacerpro.com

Peter J Raupp on behalf of Debtor Civil, LLC
peter.raupp@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Peter J Raupp on behalf of Debtor Pocahontas Processing LLC
peter.raupp@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Peter J Raupp on behalf of Debtor Resilient Eagle LLC
peter.raupp@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Peter J Raupp on behalf of Debtor Resilient Mining, LLC
peter.raupp@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Peter J Raupp on behalf of Plaintiff Civil, LLC
peter.raupp@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Peter J Raupp on behalf of Plaintiff Pocahontas Processing LLC
peter.raupp@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Peter J Raupp on behalf of Plaintiff Resilient Eagle LLC
peter.raupp@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Peter J Raupp on behalf of Plaintiff Resilient Mining, LLC
peter.raupp@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Michael J. Roeschenthaler on behalf of Creditor Committee Official Committee of Unsecured
Creditors of Civil, LLC
KMcCauley@wtplaw.com

Zachary J. Rosencrance on behalf of Creditor Pocahontas Holdings LLC
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Zachary J. Rosencrance on behalf of Creditor Pocahontas Land LLC
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Zachary J. Rosencrance on behalf of Creditor Pocahontas Sales & Logistics LLC
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Zachary J. Rosencrance on behalf of Creditor Pocahontas Surface Interests LLC
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Zachary J. Rosencrance on behalf of Creditor WPP LLC
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Zachary J. Rosencrance on behalf of Creditor Western Pocahontas Properties Limited
Partnership
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Zachary J. Rosencrance on behalf of Debtor Pocahontas Processing LLC
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Zachary J. Rosencrance on behalf of Defendant Pocahontas Holdings LLC
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Zachary J. Rosencrance on behalf of Defendant Pocahontas Land LLC
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Zachary J. Rosencrance on behalf of Defendant Pocahontas Sales & Logistics LLC
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Zachary J. Rosencrance on behalf of Defendant Pocahontas Surface Interests LLC
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Zachary J. Rosencrance on behalf of Defendant Western Pocahontas Properties Limited
Partnership
zrosencrance@bowlesrice.com, ajones@bowlesrice.com;Michelle.Livingstone@bowlesrice.com

Daniel R. Schimizzi on behalf of Creditor Committee Official Committee of Unsecured
Creditors of Civil, LLC
dschimizzi@raineslaw.com, Llescallette@raineslaw.com

Daniel R. Schimizzi on behalf of Trustee Robert L. Johns
dschimizzi@raineslaw.com, Llescallette@raineslaw.com

James R. Sheatsley on behalf of Creditor Albatross Air, Inc.
jsheatsley@gormansheatsley.org, gormansheatsley@suddenlinkmail.com

30

Billy R Shelton on behalf of Creditor Trion equipment sales, llc
bshelton@sheltonlaw.net

Michael A Shiner on behalf of Creditor KIA II LLC
mshiner@tuckerlaw.com, npetroy@tuckerlaw.com

Greg K Smith on behalf of Creditor James Endicott
gks0405@frontier.com

W. Bradley Sorrells on behalf of Creditor Kentucky Power Company d/b/a American Electric
Power
wbs@ramlaw.com

Devon J. Stewart on behalf of Plaintiff Civil, LLC
devon.stewart@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Devon J. Stewart on behalf of Plaintiff Pocahontas Processing LLC
devon.stewart@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Devon J. Stewart on behalf of Plaintiff Resilient Eagle LLC
devon.stewart@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Devon J. Stewart on behalf of Plaintiff Resilient Mining, LLC
devon.stewart@steptoe-johnson.com, steven.ransbottom@steptoe-johnson.com

Stephen L. Thompson on behalf of Creditor Committee Official Committee of Unsecured
Creditors of Civil, LLC
sthompson@barth-thompson.com, chris@barth-thompson.com

Jared M. Tully on behalf of Interested Party Utica Leaseco, LLC
jtully@fbtlaw.com, asmith@fbtlaw.com

United States Trustee
ustpregion04.ct.ecf@usdoj.gov

Sarah Elizabeth Wenrich on behalf of Creditor Committee Official Committee of Unsecured
Creditors of Civil, LLC
swenrich@raineslaw.com

Sarah Elizabeth Wenrich on behalf of Trustee Robert L. Johns
swenrich@raineslaw.com

Eric M. Wilson on behalf of Creditor West Virginia State Tax Department
eric.m.wilson@wv.gov, lora.l.rutledge@wv.gov;christine.e.evans@wv.gov

31