## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **In Re:** | **Case No.: 25-20179-DLB** |
| **CIVIL, LLC,** *et al.,* [1] | **Chapter 7** |
| **Debtors.** | **Jointly Administered** |

**RESPONSE IN OPPOSITION, AND RESERVATION OF RIGHTS, WITH RESPECT TO EXPEDITED MOTION TO CONSIDER ENTRY OF ORDERS (A) APPROVING AUCTION PROCEDURES FOR SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' MACHINERY, EQUIPMENT AND RELATED MINING ASSETS; (B) AUTHORIZING THE TRUSTEE TO DESIGNATE STALKING HORSE BIDDERS AND APPROVING PROPOSED STALKING HORSE BID PROTECTIONS; (C) SCHEDULING HEARING TO APPROVE THE SALE OF THE DEBTORS' ASSETS; (D) SCHEDULING AUCTION; (E) APPROVING FORM AND MANNER OF NOTICE OF AUCTION AND SALE HEARING; AND (F) GRANTING RELATED RELIEF**

Allegiance Capital, LLC ("Allegiance"), SMA II LP I, LLC ("SMA"), AFG Investments 1A, LLC ("AFGA"), and AFG Investments 1B, LLC ("AFGB" and, together with Allegiance, SMA, and AFGA, the "McGinty Group"), by and through their undersigned counsel, respectfully submit this response in opposition and reservation of rights (this "Response") with respect to the *Expedited Motion to Consider Entry of Orders (A) Approving Auction Procedures for Sale of All or Substantially All of the Debtors' Machinery, Equipment and Related Mining Assets; (B) Authorizing the Trustee to Designate Stalking Horse Bidders and Approving Proposed Stalking Horse Bid Protections; (C) Scheduling Hearing to Approve Sale of the Debtors' Assets; (D) Scheduling Auction;(E) Approving Form and Manner of Notice of Auction and Sale Hearing; and (F) Granting Related Relief*, [ECF No. 690] (the "Sale Motion") pursuant to title 11 of the United

---

[1] The Debtors in these chapter 7 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Civil, LLC (5464); Kratos Resources LLC (1003); Resilient Mining LLC (9306); Resilient Eagle, LLC (3535); Don Holdings, LLC (0259), Falcon Reclamation Limited Liability Company (1375), North Springs Holding LLC, Smoky Quartz LLC (2303), Big Mule Air L.L.C. (6964), Pocahontas Processing LLC (7297), and Yellow Garage, LLC (1313) (collectively, the "Debtors"). The headquarters for each of the Debtors is located at 799 Highway 3459, Harlan, Kentucky 40831.

1

States Code (the "Bankruptcy Code"), and Bankruptcy Rules of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Response, the McGinty Group states the following:

1.      Promptly upon the Trustee filing his Sale Motion, the McGinty Group analyzed the terms and conditions set forth in the Sale Motion, the Auction Procedures Order, the Auction Procedures, and the Auction and Sale Hearing Notice.[2] Through its analysis of such terms and conditions, the McGinty Group identified numerous issues that the Trustee and his advisors must address in order to quell the McGinty Group's concerns regarding the Sale Motion.

2.      Recognizing the need for a collaborative process that advances the interests of all creditors and parties in interest, the McGinty Group communicated its concerns to the Trustee and his advisors and, for the past several days, has worked diligently with the Trustee and his advisors to resolve the aforementioned concerns. While the McGinty Group remains hopeful that an agreement will be reached by and among the Trustee and the Prospective Consultation Parties, the parties have yet to reach an agreement. Accordingly, the McGinty Group files this Response for purposes of informing the Court that the McGinty Group intends to object to final approval of the Sale Motion absent an agreement that resolves the McGinty Group's concerns prior to the hearing on the Sale Motion scheduled for March 23, 2026, at 1:30 p.m. (ET) (the "Auction Procedures Hearing").

3.      First, the Auction Procedures and the Auction Procedures Order fail to impose any specific guardrails on the Trustee or his advisors to ensure that secured creditors' rights are protected. For example, the Trustee "*may* require bidder registration, proof of funds, deposits, and payment in certified funds, wire transfer, or other customary forms of payment, and any other

---

[2] Capitalized terms not otherwise defined herein shall have the same definitions as ascribed to them in the Sale Motion.

customary auction requirements …[,]" ¶10 of Sale Motion (emphasis added), "the Trustee, in consultation with the Auctioneer, *reserves the right* to group any Assets into individual or bulk lots …[,]" ¶11 of Sale Motion (emphasis added), "the Trustee also *seeks the authority, but not directive*, to identify one or more stalking horse bids for some or all Assets …[,]" ¶13 of Sale Motion (emphasis added), and "the Trustee also *seeks the authority, but not directive*, and subject to the exercise of his sound business judgment in accordance with his fiduciary duties to the estates, to accept credit bids by any putative Lienholder[,]" ¶14 of Sale Motion (emphasis added), among others. Leaving so much up to the discretion of the Trustee creates a setup where there are so many potentialities that a secured creditor cannot adequately inform itself of which of its interests could be affected and how to protect those interests. The truncated timeline proposed by the Trustee (*See* ¶ 7-8 below) only further amplifies this untenable predicament.

4.      Second, the discretion sought by the Trustee in the Sale Motion, if accepted by this Court, limits McGinty Group's right to credit bid (and other secured creditors' rights to credit bid) in a manner that is inconsistent with the Bankruptcy Code. Specifically, the "the Trustee also *seeks the authority, but not directive*, and subject to the exercise of his sound business judgment in accordance with his fiduciary duties to the estates, to accept credit bids by any putative Lienholder[,]" ¶14 of Sale Motion (emphasis added). "To the extent the Trustee does not accept a duly submitted credit bid, such Lienholder may proceed with a credit bid in the Auction upon entry of an appropriate and final order by this Court, after notice and hearing, which the Trustee will consent to being heard on an expedited basis." *Id.* "Any putative Lienholder seeking the Court's authority to credit bid should include in its filing with the Court a proposed alternative for adequate assurance of payment if the purported lien is ultimately deemed to be invalid." *Id.* Thus, any

3

secured creditor whose liens overlap with the liens of another secured creditor must withstand scrutiny by the Trustee and this Court, which is contrary to the Bankruptcy Code.

5.      Section 363(k) of the Bankruptcy Code provides the following:

> [a]t a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

Note that there is no reference to the Trustee anywhere in Section 363(k) of the Bankruptcy Code. Moreover, credit bidding often increases the small pool of bidders sufficiently familiar with the debtor's assets to buy them on a truncated timetable (and in this case, a highly truncated timetable). Credit bidding also reduces the cost to submit a bid and minimizes transaction costs in general.

6.      For such reason, the McGinty Group objects to the Sale Motion granting the Trustee discretion to reject credit bids. Rather, after receiving auction procedures that adequately inform the McGinty Group of its interests that may be affected and how to protect those interests (see ¶¶9-10 below), any secured creditor seeking to credit bid should have sufficient time to move this Court for authority to credit bid and obtain a clear determination from this Court on whether it may proceed with credit bidding and, if so, under what conditions *before* the Auction occurs. Doing so will allow this Court – not the Trustee and his advisors - to calibrate credit bidding by limiting bids to the uncontested portion of a claim or to collateral clearly subject to the bidder's perfected, non-avoidable lien, while reserving disputes over the remainder for later adjudication. This approach acknowledges § 363(k)'s default rule and uses targeted limitations only to the extent necessary.

7.      Third, as alluded to above, in addition to requesting huge discretion, the Trustee is asking this Court to allow him to conduct the Auction Procedures on a highly compressed schedule. ¶20 of Sale Motion ("the Trustee proposes to afford creditors and parties in interest no less than

21 days to object to the sale of the Assets and any designated Stalking Horse Bid, which period runs *contemporaneously* with the marketing of the Assets to be sold pursuant to the relief requested in the [Sale Motion]") (emphasis added).

8.      While courts permit this truncation in the §363 sale process, any notice of such sale must include all of salient details associated with that sale to ensure that all interested parties are adequately informed. In *In re Dalton Crane, L.C.*, the Bankruptcy Court for the Southern District of Texas sustained objections to the debtor's plan to release auction instructions ten days prior to the auction sale, holding instead that auction instructions must be included in the auction procedures approved by the Bankruptcy Court to give secured creditors the opportunity to review and comment on the instructions, particularly where the instructions included important auction procedures such as the process for bidding, bidding increments, back-up bids, proxy bidding, and determination for final bids. 641 B.R. 850, 868 (Bankr. S.D. Tex. 2022). Many of the details required by the Court in *Dalton Crane* are left unsaid by the Trustee in the Sale Motion. Accordingly, McGinty Group objects to the same and requests that all details regarding the auction process should be included in the Auction Procedures.

9.      Fourth, the trustee fails to show sufficient cause to eliminate the 14-day stay required by Fed. R. Bankr. P. 6004(h). In support of this Court waiving 6004(h)'s 14-day stay requirement, the Trustee argues that waiving that requirement will "preserve and maximize value" and avoid "continued incurrence of administrative costs in these Chapter 7 cases." ₧ 40 of Sale Motion. The Court in *In re Weiss Multi-Strategy Advisers LLC* found that waiver of the 14-day stay requirement under Bankruptcy Rule 6004(h) was appropriate because that request was predicated on the Debtors' need for immediate liquidity and the Debtors' request for a waiver is unopposed. 665 B.R. 578, 594 (Bankr. S.D.N.Y. 2024); *See* 10 Collier on Bankruptcy § 6004.10

(16th 2019) (discussing how a waiver of the 14-day stay under Bankruptcy Rule 6004(h) is appropriate where "there has been no objection to the procedure"). Here, unlike *In re Weiss Multi-Strategy Advisers LLC*, the Trustee does not have an immediate need for liquidity. Rather, the Trustee is just trying to avoid "continued incurrence of administrative costs in these Chapter 7 cases." Moreover, unlike *In re Weiss Multi-Strategy Advisers LLC* where no interested party opposed the request, the McGinty Group opposes waiver of 6004(h) 14-day stay because this process is so unsettled, *e.g.,* undefined asset list, conflicting liens, potential stalking horse, potential credit bidding, unsettled lot determination, vague bidding mechanics, *etc*. Appellate rights could be prejudiced in the current arrangement. Instead, the McGinty Group assets that a 14-day period should follow the Sale Hearing before the Auction is commenced to preserve its appellate rights (and the rights of other potentially affected parties).

10. The McGinty Group expressly reserves and preserves its rights to: (i) supplement this Response in advance of, or at, the Auction Procedures Hearing; (ii) introduce evidence (including documentary evidence and witness testimony) in opposition to the Sale Motion; (iii) examine any witness that may be called to testify at the Auction Procedures Hearing; and (iv) take such other actions as the McGinty Group determines are reasonable and necessary to preserve and protect its rights as a secured creditor under loan documents between any member of the McGinty Group and the Debtor, the Bankruptcy Code, the Bankruptcy Rules, or otherwise. Nothing herein is or shall be construed as a waiver or release of any rights that the Committee has or may have, all of which the Committee expressly reserves and preserves.

[*The remainder of this page is intentionally left blank*]

Dated: March 20, 2026                    Respectfully submitted,

                                         **AFG INVESTMENTS 1A, LLC,**
                                         **SMA II LP I, LLC,**
                                         **AFG INVESTMENTS 1B, LLC, and**
                                         **ALLEGIANCE CAPITAL, LLC**

                                         **By counsel,**

                                         */s/ Joseph G. Bunn*
                                         Joseph G. Bunn (WVSB No. 11319)
                                         BABST CALLAND, P.C.
                                         300 Summers Street, Suite 1000
                                         Charleston, WV 25301
                                         Telephone: (681) 205-8888
                                         Facsimile: (681) 205-8814
                                         jbunn@babstcalland.com

7

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| **IN RE:** | **Chapter 11** |
| **CIVIL LLC,** *et al.* | **Case No. 2:25-bk-20179** |
| **Debtors.**[3] | **(Jointly Administered)** |

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was filed and served electronically on the 20th day of March, 2026, through the Court's CM/ECF System which will provide electronic notice to all ECF participants registered in this case at the email addresses registered with the Court.

*/s/ Joseph G. Bunn*
Joseph G. Bunn, Esquire (WVSB #11319)

---

[3] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Civil, LLC (5464); Kratos Resources LLC (1003); Resilient Mining LLC (9306); Resilient Eagle, LLC (3535); Don Holdings, LLC (0259), Falcon Reclamation Limited Liability Company (1375), North Springs Holding LLC, Smoky Quartz LLC (2303), Big Mule Air L.L.C. (6964), Pocahontas Processing LLC (7297), and Yellow Garage, LLC (1313). The headquarters for each of the Debtors is located at 799 Highway 3459, Harlan, Kentucky 40831.

8