## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) |  |
| CIVIL, LLC, *et al.*, | ) | Case No. 25-bk-20179 |
|  | ) |  |
| Debtors.[1] | ) | Judge David L. Bissett |
|  | ) |  |

### OBJECTION OF THE POCAHONTAS ENTITIES TO THE TRUSTEE'S APPLICATION TO RETAIN AND COMPENSATE THE RB GROUP AS AUCTIONEER AND SALES AGENT [Docket No. 746]

Pocahontas Land LLC, Pocahontas Surface Interests LLC, Pocahontas Holdings LLC, Western Pocahontas Properties Limited Partnership, Pocahontas Sales and Logistics LLC (individually and collectively, the "**Pocahontas Entities**"), by and through their undersigned counsel, hereby submit this objection (this "**Objection**") to Robert L. Johns, Chapter 7 Trustee (the "**Trustee**") for the Debtors' Bankruptcy Estates' *Application to Retain and Compensate The RB Group as Auctioneer and Sales Agent* [Docket No. 746] (the "**Application**").[2]  In support of this Objection, the Pocahontas Entities respectfully state as follows:

### INTRODUCTION

The Trustee's Application to retain and compensate the RB Group (as defined below) should not be approved as submitted. While the Pocahontas Entities do not oppose a commercially reasonable auction process, the proposed RB Group Agreement, an exhibit to the Application (as defined below), reflects a fundamentally flawed fee structure—one that is excessive, duplicative, and insufficiently transparent. As drafted, the Application permits layered compensation

---

[1] The Debtors in these chapter 7 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  Civil, LLC (5464); Kratos Resources LLC (1003); Resilient Mining LLC (9306); Resilient Eagle, LLC (3535); Don Holdings, LLC (0259); Falcon Reclamation Limited Liability Company (1375); North Springs Holding LLC; Smoky Quartz LLC (2303); Big Mule Air L.L.C. (6964); Pocahontas Processing LLC (7297); Yellow Garage, LLC (1313).  The headquarters for each of the Debtors is located at 799 Highway 3459, Harlan, Kentucky 40831.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Application.

mechanisms, unclear cost allocations, and unwarranted charges that collectively threaten to erode estate value and improperly burden secured creditors.

As set forth below, the Pocahontas Entities object on multiple independent grounds. First, the Agreement's cost-plus provisions lack clarity and invite overreach, particularly with respect to the application of additional markups. Second, the RB Group's proposed compensation structure is excessive and duplicative, layering commissions, buyers' premiums, fixed fees, and markups without justification. Third, the Agreement imposes unsupported fixed charges, including the so-called "Off-Site Sale Expense" and "Inventory Compilation Fee." Fourth, the Agreement fails to adequately address coordination, timing, and cost allocation for the inspection and eventual removal of auctioned assets from an active mine site. Finally, the Application impermissibly contemplates the sale of an asset (Item 36) that is not property of the Estates and is equipment owned by the Pocahontas Entities. Each of these deficiencies independently—and certainly collectively—warrants substantial modification of the Application.

### BACKGROUND

1. On August 20, 2025 (the "**Petition Date**"), the above-captioned Debtors (individually and collectively, the "**Debtors**") each filed a voluntary petition (the "**Bankruptcy Cases**") for relief under chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of West Virginia (this "**Court**"). On August 22, 2025, this Court entered an order approving the joint administration of the Bankruptcy Cases. [Docket No. 47].

2. Prior to the Petition Date, the Debtors granted to the Pocahontas Entities first priority liens (the "**Pocahontas Liens**") on certain of the Debtors' equipment (the "**Pocahontas Collateral**") pursuant to that certain Security Agreement dated April 5, 2023, effective

November 22, 2022, as amended and restated by that certain Amended and Restated Security Agreement dated October 30, 2023, as further amended and restated by that certain Second Amended and Restated Security Agreement dated August 19, 2024 (collectively, the "**Security Agreement**").  The Pocahontas Entities perfected the Pocahontas Liens via (i) that certain UCC-1 filing on December 12, 2022, File Number 069-2022-002438; (ii) that certain UCC-1 filing on April 21, 2023, File Number 069-2023-000738; and (iii) that certain UCC-1 filing on September 11, 2024, File Number 069-2024-001447 (collectively, the "**Pocahontas Entities' Security Instruments**").  True and accurate copies of the Security Agreement and the Pocahontas Entities' Security Instruments previously were attached to the Motion to Clarify DIP Order at Docket No. 533.

3.      In addition, prior to the Petition Date, pursuant to that certain Bill of Sale dated December 26, 2024 (the "**December 2024 Bill of Sale**"), made pursuant to that certain Equipment Purchase Agreement dated December 6, 2024, the Debtors sold certain equipment to the Pocahontas Entities, including certain equipment described on the Equipment List (as hereinafter defined).  *See* [Docket No. 181]; *see also* [Docket No. 216] and [Docket No. 168].

4.      On August 21, 2025, debtors Civil, LLC, Resilient Mining, LLC, Resilient Eagle LLC, and Pocahontas Processing LLC, filed that certain *Complaint* against the Pocahontas Entities, commencing Adversary Proceeding No. 2:25-ap-02008 (the "**Adversary Proceeding**").

5.      On October 29, 2025, this Court entered its *Order (I) Converting these Chapter 11 Cases to Cases Under Chapter 7, (II) Approving Agreed Upon Wind Down Budget; (III) Establishing a Deadline for Filing Final Chapter 11 Professional Fee Applications, and (IV) Granting Related Relief* converting the Bankruptcy Cases to cases under chapter 7 of the

Bankruptcy Code due to the Debtors' failure to obtain financing to continue operations [Docket

No. 322] (the "**Conversion Order**").

6.      On October 29, 2025, the United States Trustee filed its *Appointment of Interim Trustee and Trustee Designation of Required Bond* [Docket No. 330] appointing the Trustee to administer the Debtors' bankruptcy estates.

7.      In order to manage the auction process described in the Sale Motion [Docket No. 690], the Trustee moved to retain Richie Bros. Auctioneers (America), Inc., IronPlanet, Inc., and Nations Capital, LLC (collectively, the "**RB Group**") as auctioneer and sales agent as described in that certain Multi-Channel Sales Agreement (the "**Agreement**") attached as Ex. A. to the Application.

**ARGUMENT**

8.      The Pocahontas Entities object to the Application on the following grounds:

**Fees and Expenses are Excessive.**

9.      The Agreement provides the RB Group reimbursement of costs plus 10%, without any explanation of whether the 10% markup applies to the cost figure or the purchase price figure. *See* Agreement [Docket No. 746-1 at p. 2 of 9] (Section 2 – Delivery; Section 4 – Refurbishment & Fuel/Batteries Cost).  In the interest of clarity, the Pocahontas Entities request that the RB Group modify the Application and Agreement to specify that the 10% markup applies only to the costs expended by the RB Group—not the purchase price of the asset sold at the auction.

10.      Further, as it relates to potential costs to be expended by the RB Group on the Pocahontas Entities' collateral (whether for transport/compilation, refurbishment, fuel, etc.), the Pocahontas Entities request that the RB Group provide a budget of their expected expenses and consult with the Pocahontas Entities prior to expending any funds related to its collateral.

4

11.     The RB Group's cost markup and fees proposed to be assessed to the Estates are excessive.  When combined, (a) the effective fee rate of the RB Group is a 7.5%-8.5% commission, (b) plus cost-plus 10% markups on multiple categories, (c) plus $100,000.00 in fixed fees for an "Off-Site Sale Expense" and "Inventory Compilation Fee", (d) plus a buyer's premium assessed to the winning bidders, including secured creditors like the Pocahontas Entities.  All in all, the proposed costs and fees are duplicative, resulting in stacked compensation streams for the RB Group to the detriment of the Estates.

12.     For example, the proposed buyer's premium, defined as "Transaction Fees" in the Agreement are based on a percentage of the sales proceeds received by the Estates for each lot sold, as follows:

| Winning Bid for a Lot | Transaction Fee |
|---|---|
| USD $25,000 or less | 10% of the winning bid; with a minimum fee of USD $100 per Lot |
| Greater than USD $25,000 up to and including USD $75,000 | 5% of the winning bid; with a minimum fee of USD $2,500 per Lot |
| Greater than USD $75,000 | USD $3,750 |

13.     As a secured party, the Pocahontas Entities object to being charged a buyer's premium to purchase their own collateral.  This buyer's premium, in addition to the estate being charged a sales commission, is exorbitant and should not be permitted.

14.     Relatedly, in addition to the proposed buyer's premium and proposed cost plus 10% provisions, the RB Group seeks to impose a commission rate as follows:

> RB Group will be entitled to a commission based on the gross sale price of each piece of Equipment as follows:
>
> (a) For any lot realizing more than $3,000 USD, a commission calculated on the aggregate gross proceeds of the sale of the Equipment, as follows:
> (i)   8.5% if total gross proceeds are up to $5,000,000 USD;
> (ii)  8.0% if total gross proceeds exceed $5,000,000 USD but are less than $10,000,000 USD; and
> (iii) 7.5% if total gross proceeds equal or exceed $10,000,000 USD.
>
> (b) 25% for any lot realizing $3,000 USD or less, with a minimum fee of $195.00 USD per lot.

15.     Beyond the proposed commissions, buyer's premiums, and cost plus 10% provisions, the Agreement proposes to impose a $50,000.00 fee as an "Off-Site Sale Expense" for

each off-site sale location where the equipment to be sold is located. *See* Agreement [Docket No. 746-1 at p. 4 of 9].  In addition, the Agreement seeks to impose a $50,000.00 administrative expense claim for an "Inventory Compilation Fee."  *Id*. These fees are unjustified, and the Inventory Compilation Fee is particularly inappropriate where the Pocahontas Entities have already incurred the expenses to gather and secure the equipment to be sold at one of the proposed sale locations.

16.     The Agreement provides that "RB Group shall be entitled to deduct from the gross sale proceeds a fixed fee in the amount of $50,000 USD (the "Off-Site Sale Expense") to reimburse Auctioneer for costs and expenses associated with conducting the sale of the Assets at locations other than Seller's premises (the "Off-Site Sale Experience")."  *Id*.  However, it is the Pocahontas Entities' understanding that the auction will be conducted online, and the Agreement does not clearly identify the "Seller" or what locations or activities might trigger the proposed Off-Site Sale Expense.  Moreover, much of the Estates' property to be auctioned is located, and has been located, for all relevant times, at an active mine site owned by the Pocahontas Entities, known as Deepwater, where the equipment has been stored and kept secure.  Accordingly, the basis for the "Off-Site Sale Expense" is unclear and unsupported.

17.     As it relates to the Inventory Compilation Fee, the RB Group is requesting a $50,000 administrative expense claim in consideration of the RB Group's time in compiling and verifying inventory for the auction.  The Pocahontas Entities object to this provision because it is duplicative with the "Off-Site Sale Expense" fee proposed to be charged, and, under the circumstances, to the extent the equipment has already been compiled, there should be no expense passed on to the Estates by the RB Group for work that does not need to be undertaken.

18.     Further, the RB Group previously evaluated large subsets of the assets to be sold at the request of the Pocahontas Entities and the McGinty Group (as defined in the Declaration).  *See* Declaration of D. Norris at Docket No. 746-2, ¶ 6.  It is difficult to understand—let alone justify— why additional identification activities are being required at this stage, particularly at such a high cost, given that the RB Group has already been paid at least twice to appraise the same equipment.

**Equipment Access and Outcome Concerns are Insufficiently Addressed.**

19.     As it relates to the pickup of auctioned assets after completion of the sale, the Pocahontas Entities reserve all rights with respect to coordination of pickup windows and removal costs associated with any abandoned assets on its property.  Section 7 of the Agreement states that the "Seller may elect to extend such pickup window to allow for pick up, however at no time will RB Group be responsible for removal costs in the event an item is abandoned by a buyer." [Docket No. 746-1 § 7 at p. 3 of 9].  The Pocahontas Entities request that the pickup of all items from Deepwater occur within 14 days after approval of the auction results and with close coordination with the Pocahontas Entities to avoid disruption to its active mine site at Deepwater.

20.     Further, the potential abandonment of unsold equipment or purchased equipment that is not picked up after the sale also needs to be addressed by the Application and/or Agreement. The Pocahontas Entities should not be left to remove and/or discard the Estates' assets after the sale process concludes. This is especially so after the Pocahontas Entities have paid storage and security expenses for this equipment for the benefit of the Estates from the beginning of this case.

21.     Similarly, the Application and Agreement do not address pre-auction visits to vet the condition of the equipment.  Any site visits need to be coordinated with the landowner and lessee for the property where the equipment is stored.  The storage locations are part of active coal mine facilities, and access to such locations needs to be controlled in order to prevent injury and

disruption to the active business operations that are ongoing on site. The Application, Agreement, and any notice documents related to the sale need to address this access issue to provide interested parties.

**Non-Estate Assets Cannot be Sold in this Process.**

22.     The Pocahontas Entities object to the RB Group's purported authority to sell any non-estate property that is owned by the Pocahontas Entities via the December 2024 Bill of Sale or otherwise.  The Trustee filed an Amended Asset List [Docket No. 799 at p. 4-7] removing nearly all of the equipment owned by the Pocahontas Entities.   However, Item 36, a 2004 CAT 785C Haul Truck, SN# APX00472, remains on the Amended Asset List and is owned by the Pocahontas Entities via the December 2024 Bill of Sale.  Accordingly, the Pocahontas Entities object to the sale of Item 36 (and any other equipment that may be owned by the Pocahontas Entities) and demand that it be removed from the auction.

## JOINDER

The Pocahontas Entities join in any objections to the Application, as if restated in full herein, to the extent that such objections are not inconsistent with this Limited Objection.

WHEREFORE, for the reasons set forth herein, the Pocahontas Entities respectfully request that this Court sustain this Objection and require modification to the Application and Agreement consistent with the bases set forth herein.

8

**Date: April 7, 2026**                    **Respectfully Submitted,**

                                           POCAHONTAS LAND LLC,
                                           POCAHONTAS SURFACE INTERESTS LLC,
                                           POCAHONTAS HOLDINGS LLC,
                                           POCAHONTAS SALES & LOGISTICS LLC
                                           WPP LLC, and
                                           WESTERN POCAHONTAS PROPERTIES
                                             LIMITED PARTNERSHIP

                                           By Counsel

*/s/ Zachary J. Rosencrance*
Charles B. Dollison (WVSB #5499)
Zachary J. Rosencrance (WVSB #13040)
Michael R. Proctor (WVSB #9122)
BOWLES RICE LLP
600 Quarrier Street
Post Office Box 1386
Charleston, West Virginia 25325-1386
Telephone: (304) 347-1100
Facsimile:  (304) 347-1756
E-mail:    zrosencrance@bowlesrice.com
E-mail:    mproctor@bowlesrice.com
Email:     cdollison@bowlesrice.com

and

Michael D. Mueller (VSB #38216) *(admitted pro hac vice)*
Jennifer M. McLemore (VSB #47164) *(admitted pro hac vice)*
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Post Office Box 1320 (23218)
Richmond, Virginia 23219
Telephone No.: (804) 420-6330
Facsimile No.:  (804) 420-6507
E-mail:        mmueller@williamsmullen.com
E-mail:        jmclemore@williamsmullen.com

                              *Counsel for Pocahontas Land LLC; Pocahontas
                              Surface Interests LLC; Pocahontas Holdings LLC;
                              Western  Pocahontas  Properties  Limited
                              Partnership; and Pocahontas Sales and Logistics
                              LLC*

9

## CERTIFICATE OF SERVICE

I, Zachary J. Rosencrance, counsel for Pocahontas Land LLC; Pocahontas Surface Interests LLC; Pocahontas Holdings LLC; and Pocahontas Sales and Logistics LLC, hereby certify that on this 7th day of April, 2026, the foregoing was served upon all counsel appearing in this case through the Court's CM/ECF system.

/s/Zachary J. Rosencrance
(WVSB# 13040)
*Counsel for* Pocahontas Land LLC; Pocahontas Surface Interests LLC; Pocahontas Holdings LLC; Western Pocahontas Properties Limited Partnership; and Pocahontas Sales and Logistics LLC